INHABITANTS OF THE EIGHTH SCHOOL DISTRICT IN NORTON *vs.*
THOMAS COPELAND & others.

Selectmen, who, on the failure of a school district to agree where to place their school-
house, have determined the location thereof, pursuant to Rev. Sts. *c.* 23, § 30, and *St.*
1848, *c.* 237, § 1, cannot proceed to lay out the land and assess damages to the owner,
without seven days' notice to him in writing; nor, *it seems,* until he has refused to sell
the land or demanded an unreasonable price.

*It seems,* that the owner of land taken for a schoolhouse lot under *St.* 1848, *c.* 237, " in the
same way and manner as is provided for laying out town ways," has no such right to
remove trees or fences as the owner of land taken for a town way has by *St.* 1848, *c.* 98.

*It seems,* that the receipt, by the owner of land taken for a schoolhouse lot, of the damages
awarded him by the selectmen pursuant to *St.* 1848, *c.* 237, § 1, estops him to object to
the irregularity of their proceedings in taking the lot.

ACTION OF TORT for breaking and entering the plaintiff's
close, and removing and converting a stone wall which stood on
the line between said close and the highway. The defendant
Thomas Copeland justified as owner of the lot, and the other
defendants under license from him.

At the trial in the court of common pleas, before *Hoar,* J. the
plaintiffs proved their possession of the close at the time of the
trespass. The defendants proved a prior possession for a long
time by Thomas Copeland. The plaintiffs then, to prove title,
offered evidence of the division of the town of Norton into school
districts, by territorial lines, embracing the whole town, and of
their own organization as a school district; and also proved the
following facts: In November 1852 the district appointed a
committee to purchase a lot, and to build a new schoolhouse
thereon; and this committee selected a lot, belonging to Thomas
Copeland, on the opposite side of the highway from the close
described in the writ, and applied to him to sell the district a lot
to build a schoolhouse upon, but he refused. The district,
on the 25th of December 1852, at a meeting duly called and
warned, voted on the question of locating their new school-
house in the lot so selected; but as two thirds of those present
and voting thereon did not vote in favor of the location, the
selectmen, on the 20th of January 1853, were applied to, by the

building committee and more than five other legal voters of the district, to select a lot on which to build the schoolhouse; and in April 1853, did accordingly select the lot described in the writ, and at the same time appraised the damages to Thomas Copeland; and the town at a subsequent meeting voted to approve their doings. No notice was given to Thomas Copeland of the intention of the selectmen to select or lay out said lot. The amount so awarded was tendered by the plaintiffs to Thomas Copeland, but he refused to receive it. After the commencement of this action, and before the filing of the answer, Joseph Copeland, another of the defendants, received said sum from one of the building committee.

Upon this evidence, the plaintiffs contended the taking of said lot was in accordance with the requirements of the statutes, and such as to give them a title; that if there had been any informality or irregularity in the proceedings of the district or of the selectmen, or if they had omitted any thing required by the statutes to give the district a title as against the owner of the land, such irregularities, informalities and omissions had been waived by the subsequent receipt of the money awarded by the select. men; and that if the proceedings were void for any irregularity they could not be impeached upon this trial.

But the judge ruled that upon the proceedings found, and the evidence in the case, the district had no title to the close de. scribed, and could not sustain the action, and directed a verdic⁴ for the defendants. The plaintiffs alleged exceptions.

*N. Morton & B. Sanford,* for the plaintiffs.

*E. H. Bennett,* for the defendants.

SHAW, C. J. This is in the nature of an action of trespass *quare clausum,* to recover damages from the former owner of a lot taken for a schoolhouse, for entering and removing a stone wall separating the lot from the highway. The defendant Thomas Copeland claimed title, and insisted that his right as owner of the lot, either as to the right of property or right of possession, had not been devested, by the proceedings of the school district, and of the selectmen, in setting off the land, as the site of a schoolhouse, pursuant to the statute. The other

defendants justified under the title of Thomas Copeland, and a license and command by him. The question is, whether under the proceedings of the school district, and the act of the selectmen in setting off the lot, the district acquired such title, or exclusive right of possession, as to enable them to maintain this action.

We are inclined to think that the two powers given to selectmen have no necessary connection with each other. The first is, when any school district cannot determine, under Rev. Sts. c. 23, §§ 28, 30, where to place their schoolhouse, the selectmen of the town to which the district belongs, upon application of the committee appointed to build or procure the schoolhouse, or of five or more legal voters of the district, shall determine where such schoolhouse shall be placed. By the subsequent *St.* of 1852, c. 110, such agreement of the district must be effected by a vote of two thirds of the voters of the district, present and voting thereon.

The other case is, " whenever a suitable place shall have been designated, by any town or school district, for the erection of a schoolhouse and necessary buildings, and the owner of the land shall refuse to sell the same, or shall demand therefor a price which in the opinion of the selectmen is unreasonable, the selectmen, with the approbation of the town, may select a schoolhouse lot, and lay out the same, and appraise the damages to the owner of such land, in the same way and manner as is provided for laying out town ways, and appraising damages sustained thereby," subject to revision by a jury. *St.* 1848, c. 237.

We are inclined to the opinion, that after the selectmen had exercised the first of these powers, and determined where the schoolhouse should be placed, they should, before proceeding to take and set off the land and assess the damages, have left the agents of the district and the owner of the land to negotiate in regard to a purchase of it, and the price to be paid for it. Such negotiation cannot be had until the location is fixed ; and until after an application to the owner of the land thus designated has been made, it cannot be known that he will refuse to sell the same, or will demand an unreasonable price therefor. Yet

it is only in one of these cases, that the selectmen, upon appli-cation, are to exercise the other power, of setting off the land and appraising the value. If this is a correct view, it would seem to be irregular, in the selectmen, to determine the place, and to proceed to assess the value, at one and the same time, though there is some color in *St.* 1848, *c.* 237, § 1, for executing both powers at the same time.

We have however not thought this point material to the pres-ent case, because, whether both powers could be exercised in the first instance or not, we are of opinion that the power of laying out land for a schoolhouse lot and assessing the damages could not be legally exercised, without notice to the owner of the land. The statute provides that the laying out of land for a schoolhouse and the appraisement of damages are to be con-ducted " in the same way and manner as is provided for laying out town ways, and appraising damages sustained thereby." To that law we are to look for the course of proceeding by the selectmen.

Before the revised statutes, and when there was no express provision requiring notice, it was held, upon general principles, that notice to the owners of the land was a prerequisite. *Cope-land* v. *Packard,* 16 Pick. 217. *Commonwealth* v. *Weiher,* 3 Met. 445. But by Rev. Sts. *c.* 24, § 67, seven days' notice in writing is required before selectmen can proceed to lay out a town way.

The right to take a lot of land for a schoolhouse, if it exist at all, is a right of eminent domain, to be resorted to only in case of necessity; it is a sovereign right only, under which the rights of private property are to be treated with the tenderest regard. The owner whose land is proposed to be taken should have the amplest opportunity to appear before the selectmen, who are made judges for the occasion, to offer any evidence and argu-ments to convince them that no necessity exists for taking the particular lot; that it may be conveniently changed; that it will be specially injurious to his dwelling-house or other property; and especially to be heard on the subject of compensation. But whatever may be the reasons, the law is plain and explicit; and as there was no notice in the present case, the statute was not

complied with, and therefore the right, intended by the statute to be conferred on the district, did not pass.

One consideration was pressed in the argument of the defendants, in the present case, which though not necessary to be decided, it seems proper to allude to; it was this. By the *St.* of 1818, *c.* 237, § 2, it is declared that the land so taken shall be held and used for no other purpose than that contemplated by the act, and shall revert to the owner upon the discontinuance. Hence it is argued that, if the lot was well laid out according to the statute, and the district took all the right contemplated by the statute, still, they took an easement only; the fee remained in the owner; and in analogy to town ways laid out, the owner had a right to take off the fences and trees; and so the defendants were justifiable in removing the wall. In deciding for the defendants, we wish not to be understood as giving any weight to this argument. The tenure by which the district would hold such land would undoubtedly be very peculiar. But whether it would be denominated in law a perpetual easement, or a demise, or a conditional fee, is perhaps immaterial; but we cannot doubt that it would give the district a right to the legal and exclusive possession of the whole lot, and all the rights, uses and benefits in the realty, which would be necessary and incidental to the keeping of a school at all seasons of the year. And we should conceive all those uses to be necessary and incidental, which would be conducive to health, comfort, mental and physical improvement, of all teachers and pupils, male and female. Such exclusive right of possession, we think, would enable the district to maintain an action of trespass for its violation.

And as to the right to remove trees and fences. The statute it is true, refers to the law regulating the laying out of town ways, as a direction to the mode of laying out a schoolhouse lot; and in the case of town ways, the owner of the land is allowed a reasonable time to take off his trees, fences and other property, which may obstruct the building of the way. *St.* 1848, *c.* 98. But where one law thus refers to another, we must take care not to follow it into its details, beyond the line where the cases are analogous. It would be inconsistent with the true intent of the

legislature, and with the just and reasonable rules of construction, to follow out the course referred to, where the reasons of the one are not applicable to the other. In case of a strip of land laid out for a way, if there be fences crossing it, or trees standing upon it, (at least upon that part intended for the travelled path,) or a well with a pump in it, they must necessarily be removed; the way cannot be made practicable and safe without it. But far otherwise in the case of a schoolhouse lot. The fence may be useful, if not necessary, to secure the lot against the highway, or a coterminous proprietor; the trees add greatly to the health and beauty of the site, and this indeed may be an important consideration in selecting it; and the well and pump may be essential to the health and comfort of the school. The question however is not directly before us; and it is therefore only necessary now to say that we do not put the justification of the defendants upon that ground, and should be unwilling, without a full and grave consideration of the question, to have it understood that, after a lot has been duly laid out as a schoolhouse lot, the owner may legally enter and remove shade trees, fences, or any portion of the realty.

One other point is relied on by the plaintiffs, which is, that all exceptions to irregularities of proceeding on the part of the selectmen were waived by an acceptance of the sum awarded to the owner by the selectmen and tendered to him by the district. Had the fact been so, we should have been strongly inclined to think that the owner would have been estopped, by so unequivocal an act as taking the compensation, from setting up any irregularities, more especially from relying on the want of legal notice prescribed for his benefit. But upon examining the facts, it appears that Joseph Copeland received of the agent of the district the sum awarded as compensation for the land; but no privity is shown between Joseph Copeland and the owner of the land, Thomas Copeland, no agency, no authority to receive the money; of course he had no authority to waive the rights of Thomas Copeland.          *Exceptions overruled.*